STINA M. SAMUELSON, ADM'X. v. THE CLEVELAND IRON MINING COMPANY.

*Mines—Dangerous premises—Nuisance—Landlord and tenant—Injury to employee—Owner's liability.*

Whoever expressly or impliedly invites others upon his premises assumes the duty of warning all who accept the invitation of any danger in coming of which he knows or ought to know but of which they are not aware.

If the owner of a mine turns it over to contractors when it is in an unsafe condition of which he knows or might know by exercising proper care, he is responsible for injuries resulting to a miner who is put to work in ignorance of the danger.

As between landlord and tenant the tenant is presumptively liable for a nuisance on the premises unless the lease contemplated its continuance, in which case both would be liable.

Where the duty to keep premises in safe condition is on the owner, he is not excused by the fact that danger is attributable to the fault of a contractor or other person; but the duty does not arise from ownership merely; he may transfer the responsibility for their safety unless he retains control and gives others to understand that they may rely upon him to protect them from the negligence of the occupants.

The owner of a mine contracted with certain persons to work it, but stipulated that the contractors and not the owner should be responsible for any injuries to workmen, and the responsibility was assumed by the contractors. The mine was in proper condition when the contractors took possession and there was nothing in the contract to lead workmen to suppose that the owner retained control of it or was responsible for their protection unless it were a stipulation that when

the contractors repaired the mine the work should be done under the supervision of a person designated by the owner. *Held*, in an action against the owner for an injury to a workman, that this stipulation was not that the owner should supervise but that he should have the right to supervise, and was for the protection of the owner; that the neglect of his own interests was not a legal wrong to others and that plaintiff had no right of action.

Error to Marquette.     Submitted June 14.     Decided October 11.

CASE.     Plaintiff brings error.     Affirmed.

*G. W. Hayden* for appellant.     The proprietor of premises upon which a contractor is engaged to do work dangerous in its nature, and likely in its performance to lead to mischief however carefully performed, is responsible for the careful and safe management by such contractor of such work, and a duty rests upon him to see that such work is properly done, to foresee mischief likely to occur and to take reasonable precautions to prevent it: *Hole v. Railway Co.* 6 H. & N. 488; *Buffalo v. Holloway* 7 N. Y. 493; *Daniel v. Railway Co.* L. R. 5 H. L. 63; *Bower v. Peate* L. R. 1 Q. B. Div. 321; *Pickard v. Smith* 10 C. B. (N. S.) 470; *Brown v. Werner* 40 Md. 15; *Coughtry v. Woolen Co.* 56 N. Y. 124; *Corby v. Hill* 4 C. B. (N. S.) 556; *Hounsell v. Smyth* 7 C. B. (N. S.) 738; Wood's Master & Servant § 337; *Robbins v. Chicago* 4 Wall. 679; *McCafferty v. Spuyten Duyvil R. R.* 61 N. Y. 178; the owner cannot escape the responsibility by delegating the performance of this duty to contractors: *Ford v. Fitchburg R. R.* 110 Mass. 240; *Laning v. N. Y. Cent. Rd.* 49 N. Y. 521; *Chicago &c. R. R. v. Jackson* 55 Ill. 492; where the preventive measures, for want of which the injury occurred, are made necessary by the very nature of the work on the premises, the duty of the owner who entrusts the work to a contractor, is violated as well when the contractor does it improperly as when he omits to do it at all: *Mersey Docks v. Gibbs* L. R. 1 H. L. 115; *Storrs v. Utica* 17 N. Y. 108; *Lowell v. Boston &c. Rd.* 23 Pick. 24; notwithstanding the contractor may

have agreed with the owner to take care of such risks
and become responsible for them, in which case *both* would
be liable : *Martin v. Temperley* 4 Q. B. 298 ; *Water Co. v.
Ware* 16 Wall 576 ; *Creed v. Hartmann* 29 N. Y. 591 ; *Milford v. Holbrook* 9 Allen 21 ; if the owner lets to a contractor certain work to be performed, and the injury complained of arises solely from careless performance of that
work by the contractor or his servant, and the work is not
in its nature such that dangers necessarily arise, but where
they arise only by casual negligence of the contractor,
the owner is not liable to a servant of a contractor : of this
class are the cases of *Pack v. Mayor &c. of New York* 8 N.Y.
222 ; *Kelley v. Mayor of New York* 11 N. Y. 432 ; *Allen v.
Willard* 57 Pa. St. 374 ; the owner of a mine after letting
a contract to take away ore, may nevertheless retain such
control and superintendence over the work as to make him
responsible for the contractor's failure to take precautions
for the want of which an employée is fatally injured : *Railroad v. Hanning* 15 Wall. 649 ; *Camp v. The Wardens* 7
La. Ann. 322 ; *Schwartz v. Gilmore* 45 Ill. 456 ; *Chicago v.
Dermody* 61 Ill. 431 ; *Chicago v. Joney* 60 Ill. 383 ; *Chicago
&c. R. R. v. McCarthy* 20 Ill. 385 ; the control retained
imposes corresponding duties : Cooley on Torts 549 ; *Lake
Superior Iron Co. v. Erickson* 39 Mich. 492 ; and if the
contractor is also negligent it only makes him liable too :
*Booth v. Boston &c. Rd.* 73 N. Y. 38 ; *Stetler v. Chicago
&c. Ry.* 46 Wis. 497.

*W. P. Healy, Wm. H. Wells* and *Ashley Pond* for appellee. The owners were held free from responsibility in the
following cases : where an architect of the proprietor
was to superintend the work and give full instructions, as the
necessity of the work demanded : *Robbinson v. Webb* 11 Bush
464 ; where the contract required a sewer to be constructed
at such time, place and in such manner as the engineer of
the city should direct : *City of Erie v. Caulkins* 85 Penn.
St. 247 ; where the contract was to construct a railroad under
the general supervision and direction of the chief engineer,

as required by the contract and specifications : *Eaton v. Railway Co.* 59 Me. 525 ; where the defendants employed a general manager who furnished the materials for the work : *Gallagher v. Piper* 16 C. B. (N. S.) 669 ; where the surveyor of the owner superintended and directed what should be done: *Steel v. Railway Co.* 16 C. B. 550 ; where an agent of a company building a mill, superintended the building to see that the contract was performed, and the injury occurred by reason of this agent's ignorance : *Brown v. Manfg. Co.* 3 H. & C. 510 ; where an employee of the contractors for building part of the line of a railway, carelessly let fall an object from a bridge, and injured a passer-by, though the company could insist on the removal of the careless workman: *Reedie v. Company* 4 Exch. 244 ; where there was a railroad engineer whose duty it was to superintend the general progress of certain work, and see that it was done according to contract: *Clark v. R. R. Co.* 36 Mo. 202, 218 ; where a contractor had supervision only to the extent of seeing that the work was done according to the contract: *Slater v. Mersereau* 64 N. Y. 138.

COOLEY, J.   This action was instituted to recover damages of the defendant for negligently causing the death of John P. Samuelson the plaintiff's intestate.

The declaration avers that defendant, on June 10, 1879, and for a long time prior thereto, was owner of an iron mine in Ishpeming, in which was a certain underground pit called pit No. Five ; that the intestate on the day named and for a few preceding days was employed therein as a common miner under Selwood & Williams who, under and by the direction of defendant were working said pit and employing men for the purpose ; that the defendant assumed and had entire charge and control over all safety arrangements in said pit and in the mine, directed the placing of all pillars, had the care of timbering and bracing therein, when necessary, and the determination of all questions relating to the safe condition of said pit, and the duty devolved upon said company to said intestate in his said employment to see at all times that said pit was safe, and that examinations were

made for that purpose from time to time, and that defendant assumed all risks to said intestate in his said employment arising from dangers occurring in said pit which might be remedied by care and skill ; that the roof of said pit was of soap-stone, which was a dangerous rock for roof support, of slight cohesiveness, liable at all times to crumble and fall, and that the roof in question required constant care, attention and examination in order to keep the same in a reasonably safe condition and to prevent the same from falling on the workmen below, and that supports and timbers ought to have been placed under it to make it safe, but defendant neglected and refused to place them ; that on the day named, while intestate was at work in said pit, a large quantity of rock fell from said roof without any fault or negligence of said intestate, but by and through the fault and negligence of defendant, which struck and killed the intestate.    And plaintiff avers that the death was caused by the wrongful conduct, carelessness, negligence and default of defendant, and she claims damages therefor.

The circuit judge was of opinion that no case was made for the jury and accordingly directed a verdict for the defendant.

Liability on the part of defendant is claimed on two grounds : *First*, that defendant being the owner of real estate which it was unsafe to venture upon, invited the intestate and others upon it without apprising them of the danger, and that the death occurred in consequence ; and *second*, that the defendant owed a duty to all persons employed in the mine to be vigilant in guarding against dangers and that this duty was wholly neglected.

The declaration states that the mine at the time was being worked by Selwood & Williams.    It appears that this was under a written contract bearing date May 1, 1878, made by defendant with E. A. Johnson & Co., to whom Selwood & Williams succeeded, whereby the contractors were to have the working of the mine, and deliver the ore to the defendant for a certain specified price per ton.    The material parts of the contract, so far as they are important to this

controversy, are the following : the parties of the first part mentioned therein being E. A. Johnson & Co. and the party of the second part the mining company.

"The quality of such ore shall be satisfactory to the superintendent (for the time being) of said second party, and shall be delivered in shipping cars on the railroad track at the mine during the shipping season, and at such other times as said second party may designate, and shall also be dumped into carts and sleighs, or stock piled at the option of said superintendent of said second party. Such mine shall be worked in a careful, prudent, and good workmanlike manner, to the entire satisfaction of said superintendent; and in case it is not so worked, and is left in a bad condition at the termination of this contract, then said second party shall have the right and is hereby authorized to put the said mine in the condition it should and would be if so worked in a good workmanlike manner, at the expense of said first parties, and retain the costs thereof out of any moneys in its hands belonging to said first parties ; and whereas, iron mining in Marquette County, including said mine, is essentially a dangerous business, where accidents and injuries to the miners and their employes are likely to occur at any time, it is therefore hereby agreed that the relationship hereby created between the parties hereto is that of contractor and contractee, and not that of master and servant.

It is the duty of the said first parties to be on the watch for danger at all times, either from slides, falls of rock, derangement of the skips, or of the machinery, and any and all other causes of danger in the mine. And in case said first parties regard any place as dangerous, they shall not be compelled to carry on any mining at such place. It shall be their duty to take down all rock or ore making any place where they are working dangerous, and when they find any dangerous ground, it shall be their duty instantly to report such dangerous place to said superintendent, to the end that he may supervise the removal of the dangerous rock, or take such other steps to make such place safe ; that is to say, as safe as a mine can be expected to be, as there can be no absolute safety in an iron or other underground mine. The parties of the first part, in consideration of the letting to them this contract, and for the price to be paid them for the ore mined, hereby agree to assume for themselves and their employes all risks of danger or accident, no matter from what cause the same may arise, and all precautions

taken against the danger of accident in said mine shall be done by said first parties, the said second party only furnishing the place to mine—the making of it safe hereby devolving on said first parties under the supervision, advice, and direction of said superintendent, for which no charge will be made by said second party.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Nothing herein shall be construed as creating any liability on the part of said second party for any debts, damages, or other liability incurred by said first parties hereunder; and in case said second party is made liable for any act, omission, misfeasance or negligence of said first parties, or any or either of them, in the working of said mine, then said first parties shall reimburse and save harmless said second party, and said second party may retain enough of said earnings of said first parties in its hands to pay any such liability."

The defendant insists that so long as the mine was being worked under this contract all responsibility for the care and safety of the mine was upon the contractors, and that they alone were charged with any duty for the protection of the workmen.

If the mine were in an unsafe condition when it was handed over to the contractors, and this was known to defendant, or by the exercise of proper care ought to have been known, and if in consequence a miner who was brought there in ignorance of the danger was killed, the defendant should be held responsible. Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware. This is a very just and very familiar principle. *Southcote v. Stanley* 1 H. & N. 247; s. c. 38 E. L. & Eq. 295; *Indermaur v. Dames* L. R. 1 C. P. 274, and L. R. 2 C. P. 311; *Francis v. Cockrell* L. R. 5 Q. B. 184; *Elliott v. Pray* 10 Allen 378; *Coughty v. Woolen Co.* 56 N. Y. 124: s. c. 15 Am. Rep. 387; *Tobin v. Portland etc. R. R. Co.* 59 Me. 183; *Latham v. Roach* 72 Ill. 179; *Gillis v. Penn. R. R. Co.* 59 Penn. St. 129; *Malone v. Hawley* 46 Cal. 409; *Deford v. Keyser* 30 Md. 179; *Pierce v. Whitcomb* 48 Vt. 127: s. c. 21 Am. Rep. 120.

But we search in vain in this record for any evidence that the defendant is chargeable with negligence in inviting miners into a dangerous mine. That the mine was at no time a place of absolute safety is conceded; but the danger was not peculiar to this mine, and by itself raised no presumption of negligence. The contract with Johnson & Co. truly affirmed that mining was intrinsically a dangerous occupation. The question is whether defendant at the time of delivering possession to the contractors had neglected any precaution which ought to have been taken to guard against danger. We find no evidence of such neglect. The roof remained in place during the season of 1878, and the tendency of the plaintiff's evidence is to show that the freezing of the following winter and the filtration of the water through it were chargeable with the disintegration and ultimate fall of the rock. The negligence, if any, must on this showing have consisted in the failure to inspect the roof frequently, and to bar down any rock that seemed likely to detach itself and fall, or to erect timbers to prevent the fall.

But plaintiff insists further that this duty of supervision and care at all times rested upon the mining company, and was not devolved upon the contractors by the agreement made with them. This is the point on which the plaintiff chiefly relies. It is not pretended that the mere ownership of real estate upon which there are dangers will render the owner liable to those who may receive injury in consequence. Some personal fault must be involved, or neglect of duty, before there can be a personal liability. As between landlord and tenant the party presumptively responsible for a nuisance upon the leased premises is the tenant. *Todd v. Flight* 9 C. B. (N. S.) 377; *Swords v. Edgar* 59 N. Y. 28: s. c. 17 Am. Rep. 295. But this might be otherwise if the lease itself contemplated the continuance of the nuisance, for in that case the personal fault of the landlord would be plain; *Smith v. Elliott* 9 Penn. St. 345; *Helwig v. Jordan* 53 Ind. 21; *Grady v. Wolsner* 46 Ala. 381. In such a case the party injured might treat both landlord and tenant as wrong-doer. *Irvine v. Wood* 51 N. Y. 224: s. c. 10 Am.

Rep. 603; *Pillsbury v. Moore* 44 Me. 154; *McDonough v. Gilman* 3 Allen 264; *Morris Canal etc. v. Ryerson* 27 N. J. 457. And where the duty to keep premises in safe con- dition is upon the owner, it is no excuse that the danger is attributable to the personal fault of a contractor or of any third person; it is sufficient to charge him that he has neg- ligently failed to guard against it. *Pickard v. Smith* 10 C. B. (N. S.) 470, is an illustration. The defendant was occu- pier of refreshment rooms at a railway station, and the open- ing to his coal cellar was in the platform over which pas- sengers passed from the cars. This was left uncovered by the coal merchant who was putting coal into the cellar, and a traveler fell in. The defendant was held liable. The ground of liability is briefly stated: "The defendant employed the coal merchant to open the trap in order to put in the coals; and he trusted him to guard it whilst open, and to close it when the coals were all put in. The act of open- ing it was the act of the employer, though done through the agency of the coal merchant; and the defendant, having thereby caused danger, was bound to take reasonable means to prevent mischief. The performance of this duty he omitted; and the fact of his having intrusted it to a person who also neglected it, furnishes no excuse, either in good sense or law." *Water Company v. Ware* 16 Wall. 566, and *Hole v. Railway Co.* 6 H. & N. 488, are also illustrations of the principle that a party upon whom a clear duty rests, cannot relieve himself of the consequences of neglect to perform it by intrusting performance to another. *Corby v. Hill* 4 C. B. (N. S.) 556, was a case where a land-owner had given another person permission to place materials in a private road across the land; and he was very properly held respon- sible for the consequences. Cases like *Laning v. N. Y. Cent. R. R. Co.* 49 N. Y. 521; *Ford v. Fitchburg R. R. Co.* 110 Mass. 240, where masters are held liable for injuries from the negligent use of defective machinery, are all cases where the duty which has been neglected is personal to the master himself, and cannot be delegated. The street cases in which cities have been held liable for the careless conduct

of contractors all rest on the same ground, that a duty has been neglected which was the duty of the principal. *Creed v. Hartmann* 29 N. Y. 591, is cited for plaintiff as having a bearing upon this case. There the defendant had contracted for an excavation in a public street, and had made the contractors stipulate to guard against all accidents and to make good all damages; but he was nevertheless held liable to one who had fallen into the excavation. But the ground of the liability was stated by one of the judges to be, that the excavation itself was wrongful: "The defendant was, therefore, liable for the injury which the excavation produced to third persons, without fault on their part, whether the workmen were guilty of negligence or not. The basis of the defendant's liability is his own wrongful act in procuring the excavation to be made without authority, and not the negligence of the contractor or his workmen in performing or guarding the work."

The mining in this case was rightful in itself, so that all cases like the one just referred to have no bearing. The contract for the working of the mine provided for its being carefully and prudently worked, and no negligent injury would have occurred had its provisions been observed. It cannot therefore be said that defendant should be held liable on the ground that the injury was a natural and probable result of its contract. It is not shown that the roof was in a dangerous condition when possession of the mine was delivered under the contract, and the evidence tends to prove the contrary. It remains to be seen, then, whether a personal duty to guard against danger to the miners was still incumbent upon the defendant as owner of the mine, and was continuous while the mine was being worked by the contractors. Mere ownership of the mine can certainly impose no such duty. The owner may rent a mine, resigning all charge and control over it, and at the same time put off all responsibility for what may occur in it afterwards. If he transfers no nuisance with it, and provides for nothing by his lease which will expose others to danger, he will from that time have no more concern with the consequences

to others than any third person.    If instead of leasing he puts contractors in possession the result must be the same if there is nothing in the contract which is calculated to bring about danger.    But if, on the other hand, he retains charge and control, and gives workmen a right to understand that he is caring for their safety and that they may rely upon him to guard against negligent conduct in the contractors and others, his moral accountability for their safety is as broad as it would be if he were working the mine in person; and his legal accountability ought to be commensurate with it.

But we do not find that in this case there was any such retention of charge and control, or that the arrangement between the contractors and the mining company gave to workmen any assurance that the company would protect them against the negligence of the contractors and their servants.    The terms of the contract are very full and specific in their negation of any such assurance; for the contractors expressly assume all risks themselves; and any workman made aware of the terms of the contract would understand that the mining company had taken special precautions to relieve itself of the duty upon a supposed breach of which this action is based.    If notwithstanding the contract the duty of protection still rests upon the mining company, it is because no stipulation in the contract, however carefully worded, could prevent it.

If the terms of the contract were such, when all its stipulations were considered, as to leave the charge and control of the mine and its operations in the hands of the owner, we should agree that it must be responsible for the negligent failure to guard against dangers, and that any stipulations to the contrary would be futile.    We are to judge of an arrangement by its substance, and not by what it is called in the papers of those who make it.    If a man is principal in a transaction, he cannot relieve himself of the obligations of a principal by stipulating that he shall only be known and considered as an agent or servant.    Nothing that is black can be made white by simply calling it so.    This is as plain in law as it is elsewhere.

But in the case of leasing this mine there was nothing to preclude the contractors assuming the complete control if they saw fit to do so. The question is whether they have done so in fact. Upon this no controversy could arise were it not for the provision in the contract that the making the mine safe should be under the supervision, advice and direction of defendant's superintendent. This the plaintiff claims is conclusive.

If this clause could have no office except to retain control in the hands of the mining company while professedly repudiating it, and would be otherwise idle and meaningless, the argument which is made for the plaintiff upon it would appear unanswerable. But other reasons are both apparent and cogent. Aside from any consideration of humanity, which might incline any one in delivering over to another a dangerous property to stipulate for some personal oversight, the mining company had abundant reason in its own interest. Negligent management might not only expose lives to peril, but might ruin the mine itself. Daily vigilance was important to preclude such a disaster, and the owner who had been working and was familiar with it would understand the weak points better and know better what was required to protect them than any persons new to the mine. The owner would also be more interested than another in being wary and vigilant. There is ample reason in these facts for demanding and insisting upon some right of supervision. But the supervision does not make the owner principal in the mine, or master in the working of it. The owner assumes towards no one the duty to supervise ; he does not stipulate to supervise ; he only contracts for a privilege. If the mine-owner in this case had dismissed the superintendent and sent no one to inspect the working, no miner could complain that a duty owing to him was being neglected. The company had not promised to protect him, or to indemnify him for injuries ; on the contrary it had expressly stipulated that it should assume no such responsibility. The privilege of intervention for its own protection was reserved ; but the neglect of one's own inter-

est is no wrong to others. Legal wrongs must spring from neglect of legal duties. *Reedie v. Railway Co.* 4 Exch. 244, is in point here.

The conclusion is that the plaintiff has no right of action. Whether there was negligence on the part of any one we do not consider.

The judgment must be affirmed.

The other Justices concurred.