OTTO NEIMEYER, Appellant, v. WEYERHAUESER & DENK-
MAN.

**Master and Servant:** LIABLE FOR SUBCONTRACTOR. A mill owner, who, retaining the charge of the running of the machinery in his mill, contracts with another to do the manual labor, knowing that such person will have to employ others, will be liable for injury to any employe of such contractor, resulting from defects in the machinery.

**Practice in Supreme Court:** ARGUMENT. An assignment of error not supported by argument will not be considered, and a mere statement of the point is not such argument.

*Appeal from Scott District Court.*—HON. P. B. WOLFE, Judge.

TUESDAY, OCTOBER 8, 1895.

Action for personal injuries. The court directed a verdict for the defendants. The plaintiff appealed.— *Reversed.*

*D. B. Nash* and *Hubbell & Hubbell* for appellant.

*Cook & Dodge* for appellees.

Granger, J.—The plaintiff is a minor, and sues by his next friend. The defendant firm is the owner and operator of a sawmill for the general manufacture of lumber, in which is included the manufacture of shingles. The motive power of the entire mill is a steam engine. The record, as to facts, is by stipulation; the actual facts in some instances appearing, and in others what the evidence *prima facie* shows. The plaintiff was an employe in the shingle department of the mill, and when engaged in clearing away the shavings and dust from the saw his hand was caught and injured,

and this action is for damage sustained. The following, from the stipulation, will show some of the important facts as concisely as they could otherwise be stated: "(14) That in the process of manufacturing shingles the material passed through several stages of preparation and finish, the shingle logs being, by machinery, first cut into cubic form; thence cut into shingle blocks; thence transferred by machinery to the shingle-cutting machine, by means of which the shingle blocks were cut into shingles; thence the shingles passed to the floor beneath, where they were sorted and packed in shingle-packing racks; such racks being implements belonging to the saw mill for that purpose. (15) That operatives, at a fixed compensation per day, by means of machinery and appliances, performed the work of the general manufacture of lumber, including those engaged in the cubing of shingle logs and cutting the same into shingle blocks and transferring them to the shingle-cutting machine. (16) That the particular work to be performed after the shingle blocks reached the shingle-cutting machine was, substantially: First, the picking up of each several block, and placing the same upon the shingle-block carriage table, and applying such block to the shingle-cutting saw, the shingles passing to the room below as fast as cut, upon an inclined plane; second, the sorting and packing of the shingles in shingle-packing racks aforementioned; third, the cleaning away of the shavings and sawdust from the shingle-cutting machine and saw and saw teeth; fourth, the starting and stopping of the motion of the machinery, by means of the lever appliance, and the movement of the vertical lever in the manner hereinbefore described, as occasion required. That, as this work required the services of more than one person, Louis Kessler, mentioned in the pleading, under a verbal agreement or understanding, by him with the defendants, simply undertook to perform said work by

himself and by others whom he should employ to assist
him, and pay for their services, and received from
defendants a fixed sum per thousand shingles which he
should so cut, sort, and pack into shingle-packing racks,
as compensation therefor.    That under such agreement
or understanding it was contemplated by said Kessler,
as also by defendants, that he, Kessler, would neces-
sarily employ others, at his own expense, to assist him
in the performance of said work, and that such assist-
ants would be chiefly boys.    That defendants also,
prior to the happening of the injury, had knowledge of
the fact that said Kessler employed boys to assist him
in the sorting and packing of the shingles, and in clean-
ing away the shavings and sawdust from the shingle-
cutting machine and saw and saw teeth.    That the evi-
dence shows, *prima facie*, that about the twelfth day of
May, 1890, Otto Neimeyer, the plaintiff, who was then
twelve years and ten months old, began to assist said
Louis Kessler in the work of cleaning away the shav-
ings and sawdust from the shingle-cutting machine and
saw, at his, said Kessler's request, and for a compensa-
tion to be paid him by said Kessler.    That on the fourth
day of his said employment said Kessler for the first
time requested him to clean away the shavings and
sawdust which had accumulated directly beneath the
saw and saw teeth in and upon the under curvature of
the iron saw guard extending along the east side of the
shingle-machine framework.    That in order to properly
clean away such shavings and sawdust it was neces-
sary to kneel down beneath the shingle-cutting saw,
and reach the left arm and hand diagonally upward to
the under side of the saw and saw teeth, and by a
motion of the hand and fingers brush away the shav-
ings and sawdust.    That said Kessler, at the time of so
requesting said Otto to do said work, kneeled down by
the saw, and placed his left arm and hand diagonally
upward to the under portion of the saw and saw teeth,

and then showed said Otto the place where and the
manner in which he should thus carry out his (Kess-
ler's) instructions in cleaning away the shavings and
sawdust. That in order to do this work it was first
necessary to stop the running of the saw. Kessler
accordingly stopped the running of the saw by moving
forward the vertical lever, and placing the iron pin in
the horizontal slot hole, whereby the running of the
saw was stopped, and thereupon the instructions last
aforementioned were given to said Otto; that the run-
ning of the saw on this occasion was so stopped, and
such instructions given, near 5:30 o'clock in the after-
noon, the saw being stopped for the evening. That Kess-
ler, after having given such instructions to Otto, went
down stairs to the room below, and left Otto to carry
out his instructions. That Otto then proceeded to the
work thus assigned him, and which he had never before
attempted to do. He thereupon kneeled down beneath
the saw, and, placing his right hand on the edge of the
board of the shavings trough, as instructed to do by
Kessler, and then leaning over the lower horizontal
cross bar of the iron framework of the shingle machine,
and placing his left leg and knee partially over said
cross bar, and resting his weight on his right leg, which
was also partially resting on said cross bar, reached his
left hand diagonally upward to the under part of the
saw and saw teeth and began to clean away the shavings
and sawdust therefrom, whereupon the saw suddenly
assumed a running motion, whereby the thumb of his
left hand was caught in the saw teeth and cut off, and
then his little finger was in like manner cut off, and
also his forefinger was so injured as to be practically
useless. That at the time of the happening of such
injury the other general machinery of the sawmill was
running, accompanied by the usual vibrations of the
beams and floor."

The injury to plaintiff occurred in May, 1890, and the following facts are stipulated: "(1) That during the years 1890 and 1891 the defendants were the owners and operators, in actual possession and occupation, of the sawmill referred to in the pleadings in said cause. (2) That said sawmill contained and consisted of machinery and appliances for the general manufacture of lumber in its various departments, including the manufacture of shingles, and that such machinery was operated for that purpose." Appellee attempted to sustain the action of the court in directing a verdict for it by stating as a rule that: "Where one makes a contract with another for certain work, retaining no control over the details of performing such work, the contractee is not liable to third persons for injuries sustained in the progress of the work." The rule, as stated, seems to have been taken from the following language from Wood's Law of Master and Servant (section 311), or similar statements elsewhere: "When a person lets out work to another to be done by him, such person to furnish the labor, and the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the neglect or improper execution of the work of the contractor." Appellee cites in support of his rule, Wood, Mast. & Serv., and the following Iowa authorities: *Wood v. School Dist.*, 44 Iowa, 27; *Brown v. McLeish*, 71 Iowa, 381 [32 N. W. Rep. 385], and *Miller v. Railway Co.*, 76 Iowa, 655 [39 N. W. Rep. 188]. It will be seen by a reference to these authorities that they announce the rule as to the liability of an employer for the negligent acts of a contractor whereby his employes are injured. Under the facts of this case as stipulated we do not think that that proposition of law is involved. It seems to us to be a question of the liability of the defendant firm for its own negligence. In the cases cited, the

employment under the contractor is of that independ
ent character that the first employer has no control over
the contractor or his employes, nor does he owe to such
employes any duty in regard to their employment.  It
seems to us that this case is widely different from those
cited, and in this respect the parties are in dispute as
to the facts shown by the record.  Kessler's employ-
ment, as we view the record, was to take the shingle
blocks as they came from the shingle-cutting machine,
and, by himself and others whom he might employ, and
by the aid of the machinery and appliances in the mill,
convert them into shingles, and pack them into racks.
He undertook to furnish the labor by which the com-
pany could, in its mill, and by its machinery and appli-
ances, owned and operated by itself, manufacture the
shingles.    Kessler had no more control or authority
over the machinery than he would have had had he
worked by the day or week.    In that case he would have
applied and detached the power by which the particular
machinery was operated, just as he was authorized to
do under his agreement to do the labor of handling the
blocks to convert them into shingles.  We think the
obligation of the defendant company as to care in keep-
ing in repair and operating the machinery, as to Kessler
himself, was the same under the contract by which
Kessler was to do the work at so much per thousand,
as if he did the work by the day or week.  Kessler was
not to manufacture the blocks into shingles, but only
to do the manual labor for that purpose, and the defend-
ant was to do the rest; that is, to furnish and operate
the machinery for that purpose.  The rule of reason-
able care obtained under such an employment.  The
stipulation of facts shows that in the employment the
defendant knew that others than Kessler would work
about the machinery it was to operate, and we think the
same rule as to care and diligence obtained as to such
employes, although under the immediate employment

of Kessler. As to Kessler himself, such a rule results from the character of the contract with Kessler. The rule applicable to this case is stated in *Wood v. School Dist.*, *supra*. It is this: "Where work is contracted to be done which is not of itself dangerous, but becomes so by the negligence of the contractor, the employer is not liable for injuries resulting therefrom; but if the work is dangerous of itself, unless guarded, and the employer makes no provision in his contract for its being guarded, and does not make a proper effort to guard it himself, then he is negligent, and cannot escape liability on the ground that the work was done by a contractor." It cannot be said but that the work done by the plaintiff was dangerous unless properly guarded by appliances to keep the machinery from motion while being done. It is expressly averred that the machinery was defectively constructed, and dangerous to persons working about it. The testimony tends to show such facts, especially in regard to the pin intended to hold the lever in place when so moved as to stop the machinery. The question of whether a proper effort was made by the defendant—that is, whether it exercised proper care—was one for the jury. We are not to be understood as saying that the defendant would be liable for merely negligent acts of Kessler, who was plaintiff's employer, if diligent itself in the particulars as to which it owed a duty to those working about the machinery. Our conclusion is based upon the terms of the contract, by which defendant placed itself under an obligation to whoever might be properly engaged about the machinery because of such contract; and we may say, upon authority, the same conclusion would result, independent of such a contract, where the duties of operating the machinery were the same. The case of *Coughtry v. Woolen Co.*, 56 N. Y. 124, is significantly in point.

Appellant presents some questions as to the rulings on the admission of evidence which are very important. They are not argued. We are merely referred to the questions and rulings, and asked to consider them should a new trial be awarded. While we do not insist on elaborate reasoning, such assignments should be briefly noticed by argument, and authorities should be cited. It is not done on this branch of the case by appellant, and when not done we do not consider the assignment. A mere statement of the point made does not entitle it to consideration. *Siltz v. Insurance Co.*, 71 Iowa, 710 [29 N.W. Rep. 605]. That is all that is done in this case as to questions of evidence. The judgment is *reversed*.