[Connors-Weyman Steel Company v. Kilgore, et al.]

# Connors-Weyman Steel Company *v.* Kilgore, *et al.*

## *Injury to Servant.*

(Decided June 30, 1914.   Rehearing denied November 7, 1914.
66 South. 609.)

1. *Master and Servant; Independent Contractor Liability of Owner to Employee of Independent Contractor.*—Unless the mine owner is bound to do so by agreement with the independent contractor, or unless he has assumed to do so, with knowledge of the contractor or his employee, who had relied on his so doing, such mine owner need not furnish any part of the equipment for the operation of his mine, where, for his own benefit he has procured an independent .contractor to work his mine.

2. *Same; Contract; Construction.*—A contract for the operation of a mine binding the owner of the mine to furnish the railroad sidetrack and tipple, tramway, hoisting engine, and other enumerated appliances, and binding the contractor to take the mine as it stands, furnish all labor, and assume all risks from accident, and to hold the owner harmless of any liability, does not place upon the owner the duty of furnishing a derailer attachment for the tram track, but the duty, if imposed on anyone, is on the independent contractor alone.

3. *Same; Construction.*—Where the contract provides, as between the mine owner and. the independent contractor, that the mining shall be in accordance with the best known methods and mining law, and to the satisfaction of the mine owner and engineer, such provision is for the protection of the mine and mine owner, and not for the benefit of the employees of the independent contractor, except as performance of the provision may so operate incidentally in their behalf.

4. *Same; Evidence.*—Where the president of the mine owning corporation testified that it equipped the mine and turned it over to the independent contractor, that it furnished the outside equipment and the track, but had nothing to do with laying it or operating it, that the contractor bore all the expenses of cleaning out the mine and laying the track, that its engineer went into the mine as often as he thought necessary to make proper reports to the state mine inspector, and to report anything he saw that was wrong, but did not direct the mining of the coal, it was not shown that the corporation assumed towards the employees of the independent contractor the duty of furnishing a derailer attachment for the mine tramway track.

5. *Same; Injury to Servant; Assumption of Risk.*—Where the absence of a derailer attachment was known to the miners, and they undertook to work without the protection that such an attachment might have given them, and relied on the care of their fellow workmen, and on a wooden block used to guard the mouth of the mine against runaway cars, such miners could not recover for injuries caused by runaway cars.

APPEAL from Shelby Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Action by Peggie Kilgore and others, as administratrices of R. L. Kilgore, deceased, against the Connors-Weyman Steel Company for damages for the death of their intestate, alleged to have occurred while in the service or employment of defendant. Judgment for plaintiff and defendant appeals. Reversed and remanded.

CABINISS & BOWIE, and BROWN & LEEPER, for appellant.

W. A. DENSON, for appellee.

SOMERVILLE, J.—The plaintiffs' intestate was killed while working in a coal mine by being struck by two empty tram cars, which escaped outside, and, uncontrolled, ran down the slope into the mine.

The case went to the jury on count A of the complaint. This count seeks to fasten upon the defendant a common-law liability for the death of plaintiff's intestate, resulting from the alleged negligence of defendant in failing to provide a derailing switch near the mouth of defendant's mine. The alleged duty of the defendant in this behalf is founded upon the following allegations of fact: (1) Defendant owned the coal mine; (2) it had contracted with one Adrien Sicard to mine the coal therein for his own benefit; (3) the intestate was an employee of Sicard, and as such, with the consent and at the invitation of defendant, was in said mine when killed; (4) He was then engaged in mining coal for defendant's benefit, and was at a place where his duties as such miner required him to be.

Construing the complaint more strongly against the pleader, it must be taken as showing that Sicard was an independent contractor. The relations and obligations existing between such a contractor and his contractee, and between his employers and his contractee, have been often discussed and stated.—*Harris v. McNamara,* 97 Ala. 181, 12 South. 106; *Lookout Mt. Iron Co. v. Lea,* 144 169, 39 South.1017; *Tenn., etc., Co. v. Burgess,* 158 Ala. 519, 47 South. 1029; *Rep. I. & S. Co. v. Fuller,* 6 Ala. App. 448, 60 South. 475; *Porter v. Tenn., etc., Co.,* 177 Ala. 406, 59 South. 255; note, 76 Am. St. Rep. 382-428. It may be conceded that a mine owner, who, for some benefit to himself, procures the working of his mine, even by an independent contractor, and therefore impliedly invites such contractor and his employees to enter and use such mining premises, is liable to them for personal injuries resulting from any condition of the premises which is inherently dangerous, if the owner had knowledge or notice of such condition and the contractor or his employees had not. —*Samuelson v. C. I. Mining Co.,* 49 Mich. 164, 13 N. W. 499, 43 Am. Rep. 456; *Douglass v. Marsh,* 141 Mich. 209, 104 N. W. 624; *So. Oil Co. v. Church,* 32 Tex. Civ. App. 325, 74 S. W. 797, 75 S. F. 817; *Stevens v. United Gas Co.,* 73 N. H. 159, 60 Atl. 848, 70 L. R. A. 119. See, also, *Sloss I. & S. Co. v. Tilson,* 141 Ala. 152, 37 South. 427.

But prima facie out of these conditions and this relationship no duty is devolved upon the mine owner to furnish any part of the equipment necessary or suitable for the operation of the mine; and more especially is there no duty to select and install such safety appliances for track, trams, or machinery as would render their negligent operation by the contractor or his

employees less likely to result in injuries to them. In order to fasten such a duty upon the mine owner (the contractee) it must be made to appear, either that he was bound to do so by agreement with the contractor, or else that he had in fact assumed to do so with the knowledge of the contractor or his employees, and that they had relied upon his doing so. Tested by these rules, the allegations of the complaint are manifestly not sufficient to show that defendant owed to the intestate the duty of providing "a derailing switch near the mouth of the mine," and the demurrer to the count in question should have been sustained.

The matter set up in defendant's special plea to count A was admissible in defense under the general issue, and error cannot be predicated upon its elimination by demurrer. In support of their theory that it was defendant's duty to provide a derailing switch for runaway cars at the mouth of the mine, plaintiffs offered in evidence the written contract between defendant and Sicard, and also elicited from defendant's witness (and president) certain facts relative to defendant's participation in the mining of the coal, and its responsibility for the condition and equipment of the tramway running from the tipple down the slope into the mine.

The most important terms of the contract bearing upon this issue are: (1) The company shall furnish the railroad side tracks and tipple, tramway, hoisting engine, boilers, pump, ties, light rails for tramway, and 24 tram or coal cars, the same to be installed and ready for use; also to furnish light rails 12 pounds and 20 pounds to the yard, which go into the mine, and which are to be installed therein by the contractor at his expense.

(2) The contractor shall take the mine as it stands, furnish all labor, and stand all expense in suitably re-

pairing the mouth of the mine. He shall also bear all
expense in cleaning out the mine, laying the track, tim-
bering the mine, and furnishing and doing everything
else which may be necessary to mine the coal properly
and with safety both to the lives of the men as well
as to preserve the mine.

(3) The contractor assumes herewith all risk from
accidents endangering the lives of his men, and from
any and all causes whatsoever, both in the mine or
about it, along the tramway, or in any way pertain-
ing to the conduct or operation of the mine, either in
part or as a whole, and to hold the company harmless
from any liability or damage whatsoever of any kind
or character to the men or property.

Other provisions required Sicard to pay all labor in
and out of the mine, to screen and classify the coal and
load the three grades on board the cars, for which he
should receive $1 a ton to the extent of 300 tons per
day, and to mine the coal in the best manner so as not
to be harmful to the mine, and in accordance with the
mine laws of Alabama, and to the satisfaction and ap-
proval of the company and its engineer.

We do not think that impartial minds can differ as
to the meaning and effect of this contract. Unques-
tionably it makes of Sicard an independent contractor;
and, while it requires the mine owner to furnish cer-
tain machinery and certain appurtenances in the way
of side tracks, tipple, and tramway, with ties and rails
therefor, it is expressly stipulated that the contractor
shall *take the mine as it stands,* bear all expense in
preparing the mouth, *laying the track,* timbering the
mine and *furnishing and doing everything else neces-
sary to mine the coal properly and with safety to the
lives of the men,* and, finally, the contractor agreed to

assume all risk from accidents to his men, inside or outside of the mine, in its conduct and operation.

There is here no requirement that the mine owner shall furnish a derailer attachment or apparatus for the tramway track. On the contrary, this duty, if the law imposed it upon any one, was expressly devolved upon the contractor, and upon him alone. As said by Judge Cooley in a case very like this in all of its substantial aspects: "If, notwithstanding the contract, the duty of protection still rests upon the mining company, it is because no stipulation in the contract, however carefully worded, could prevent it."—*Samuelson v. C. I. Mining Co.*, 49 Mich. 164, 13 N. W. 499, 43 Am. Rep. 456.

Quoting further from Judge Cooley's clear and able opinion in that case, and applying his language here: "We do not find that in this case there was any such retention of charge and control, or that the arrangement between the contractors and the mining company gave the workmen any assurance that the company would protect them against the negligence of the contractors and their servants. The terms of the contract are very full and specific in their negation of any such assurance; for the contractors expressly assume all risk themselves, and any workman made aware of the contract would understand that the mining company had taken special precautions to relieve itself of the duty upon a supposed breach of which this action is based."

The *Samuelson Case* has become a leading American authority on this subject, and we think deservedly so. See 18 Notes to Am. Rep. p. 1121.

Nor does the provision that the mining shall be done in accordance with the best methods and with the mining laws of the state, and to the satisfaction of the

company and its engineer, change the situation at all; for these requirements are obviously for the protection of the mine and the mine owner, and not for the benefit of an independent workman, except as they may operate incidentally in that behalf.—*Merriweather v. Sayre Mining Co.*, 161 Ala. 441 (12), 49 South. 916; *Porter v. Tenn., etc., Co.*, 177 Ala. 406, 59 South. 255 (17); *Samuelson v. C. I. Mining Co., supra; Hooper v. Ordway*, 157 N. C. 125, 72 S. E. 839; *Bowen v. Smyth*, 68 Wash. 513, 123 Pac. 1016; *Pottorff v. Fidelity Co.*, 86 Kan. 774, 122 Pac. 120.

It remains to consider whether there was any evidence tending to show that defendant did in fact undertake to make and keep the operation of the mine, or any part of it, safe for Sicard's employees, with their knowledge of and reliance upon such an undertaking. On his cross-examination President Connors, of the defendant company, stated that all they did was to equip the mine and turn it over to Sicard; that they equipped the outside part of the mine, but not the inside; that they furnished the track, but had nothing to do with laying it, or operating that; that Sicard bore all the expense of cleaning out the mine and laying the track, and furnishing and doing everything else that might be necessary; that their engineer went into the mine as often as he thought was necessary to measure up and make the proper reports to the state mine inspector, and to report anything that he saw was wrong to witness, but he did not direct the mining of the coal; that if the engineer saw anything injuring the lives of the men he would report it to witness, and he (witness) would take steps to correct it, but he never had an adverse report from him.

This testimony—and there is nothing else germane to the inquiry—has no tendency whatever to show that

defendant undertook the duty of making safe the operation of the mine by Sicard, nor that his miners so understood or expected. The most that it can be said to show is a humanitarian, but purely gratuitous interest in their safety, and a willingness to. conserve it against open abuses that their officers might chance to observe. Certainly, even if such willingness had been known to the miners, it would have carried no sort of assurance that the tramway had been or would be equipped with an approved safety device of the sort here insisted upon.

Moreover, the absence of a derailing switch at the mouth of the mine was necessarily known to the miners. They undertook to work in the mine without the protection it might have given them. There was no concealed danger, and they were relying upon the care of their fellow workmen and the efficacy of the "dead man" (a wooden block used to guard the mouth of the mine against runaway cars). In a Massachusetts case, where it was held that a factory owner ·was liable to the servant of an independent contractor who was injured by defective machinery which the owner furnished and undertook to keep in repair, the contention was made by the plaintiff that automatic guards, formerly in use there, and known to the owner, but unknown to the plaintiff, should have been on the machinery that inj—ed the plaintiff. Said the court, per Morton, J.: "He knew that there was no guard on the machine, and no way of preventing the head from coming down if the machine was out of order. The fact that there was no guard was an obvious one; and, in working on the machine, he must be held to have assumed the risk resulting from the absence of a guard. Whether he did or did not know that automatic guards were in use on such machines was immaterial. He

agreed to work on the machine as it was, and the defendants owed no duty to him to put on the guard. Having assumed the risk of operating the machine without a guard, the plaintiff cannot now claim that one should have been put on."—*Toomey v. Donovan*, 158 Mass. 232, 33 N. E. 396.

To summarize our conclusions: (1) There was no defect in the premises of defendant inherently dangerous to an invitee, who was there for the purpose of mining coal under an independent contractor.

(2) If the absence of a derailing switch from the tramway track could constitute such a defect, it was as well known to such invitee as to the owner, and could furnish no basis for the liability of the owner merely as an invitor or licenser.

(3) By express contract with the contractor the owner was absolved from every duty with respect to the operation of the mine and the safety of the miners in their relation thereto.

(4) Under that contract, specifically, the owner reserved no control over the tramway, and was obligated to do no more than furnish the way, the ties, and the rails for initial construction.

(5) The undisputed evidence has no tendency to show that the owner in fact assumed for the contractor his undoubted duty of making the mine reasonably safe for his employees, if by due care it could be done, nor that the owner led such employees to believe that it had so assumed, nor that they in fact relied upon any supposition that a derailing switch had been or was about to be installed by the owner.

On these findings the defendant company is not liable for the catastrophe that deprived the unfortunate intestate of his life, and the trial court should have

granted the peremptory instruction requetsed in writing by the defendant.

We deem it unnecessary to discuss other minor questions.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SAYRE, and DE GRAFFENRIED, JJ., concur.