220 So.2d 261

**ZONING BOARD OF ADJUSTMENT OF CITY OF MOUNTAIN BROOK et al.**

**v.**

**Elinor WRIGHT et al.**

**6 Div. 536.**

Supreme Court of Alabama.

Jan. 30, 1969.

Rehearing Denied March 13, 1969.

Brown, Pointer, Williams & Heaps and Jenkins, Cole, Callaway & Vance, Birmingham, for appellants.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellees.

Drayton N. Hamilton, Montgomery, for League of Municipalities, amicus curiae.

MERRILL, Justice.

This appeal is from a judgment in the circuit court as the result of a trial de novo appeal under Tit. 37, § 783, Code 1940, from a decision of the Board of Zoning Adjustment of the City of Mountain Brook, which Board, and seventeen property owners are appellants in this court.

The appellees here are Elinor and Harold D. Wright, the owners of one tract of land affected by the proceeding, Mrs. Bryce Streit, the owner of another tract so affected, and Everett Shepherd, Jr., who holds a lease and option on the Streit tract.

Appellees initiated this matter by filing an "Appeal Under The Zoning Ordinance" before the Board of Zoning Adjustment of Mountain Brook (hereinafter designated as BZA), wherein they applied for a land use variance covering property in a Residence "A" district to allow the land use on the property to be Business District. BZA denied the request and appellees appealed to the circuit court. The intervenors asked leave to intervene in behalf of BZA and leave was granted.

A trial by jury was begun on December 5 and ended December 14, 1966. The verdict was in favor of appellees and granted a land use variance "to authorize and permit the construction, erection and operation of a Mall type Shopping Center, according to the plans and specifications as described in plaintiff's exhibit number 7 introduced in evidence in this proceeding." Judgment was entered on the verdict, a motion for new trial was overruled and appellants appealed.

The main question raised by several argued assignments of error is whether appellees had a right to have a jury trial to try the case and grant a variance. Appellants contend that appellees have used

the request for a use variance to have a jury perform a legislative act—rezone the property—when rezoning is specifically the duty of the city governing body and not for a jury.

Appellants do not argue the sufficiency of the evidence to support the verdict and the judgment thereon and so stated in their brief and oral argument.

Title 37, § 781, Code 1940, as amended, provides for the appointment of a board of adjustment by the legislative body of the city and, among its powers, is "To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done"; and § 783 provides for appeals from a decision of the board of zoning adjustment.

In Arant v. Board of Adjustment of City of Montgomery, 271 Ala. 600, 126 So.2d 100, 89 A.L.R.2d 652, this court said: "We are of opinion that § 783, Title 37, Code 1940, provides for jury trial on timely demand of either party."

■ The procedure was correct in the instant case if the jury was not exceeding its authority when it granted the land use variance. The contention that the jury was allowed to "zone" is answered fully in Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244, and that case has been cited in practically all of our zoning cases since 1951. We think it sufficient to quote only one paragraph from the opinion in Nelson v. Donaldson, supra:

"We are of the opinion that § 781, Title 37, Code 1940, properly empowers the boards of adjustment to determine that in a particular situation the zoning ordinance should not be applied literally, and to that end the board should make proper adjustment to prevent unnecessary hardship, even to the extent of authorizing nonconforming uses. In order to prevent injustice, oppression, arbitrary application, and to promote 'the public interest,' the board of adjustment has the power to find, under a certain set of facts, that the literal application of the ordinance would not be within the spirit of the ordinance. In other words, having in mind the public interest, and the interest of the people in a given use district, the legislature intended that so long as no oppression or unnecessarily great burden exists and, therefore, no great individual injustice done, the ordinance should be applied strictly; but, on the other hand, if the situation is such as to indicate oppression and unnecessary individual burden, then the spirit of the zoning ordinance would not be in accordance with the spirit of the law, that it should not be applied strictly and literally."

It only remains to ascertain if there was sufficent evidence to support a finding of unnecessary hardship.

■ Whether a variance should be granted depends upon the facts of each case. Arant v. Board of Adjustment of City of Montgomery, 271 Ala. 600, 126 So.2d 100, 89 A.L.R.2d 652.

We state some of the evidence that shows unnecessary hardship.

The proposed shopping mall involves the development of approximately 34 acres. Running through the property is Shades Creek. Approximately 14 acres lying south of Shades Creek was annexed by Mountain Brook in 1960. The area surrounding Shades Creek on either side is a virtual swamp. It was estimated that the proposed culvert for Shades Creek, 294 feet long, 90 feet wide and 10 feet high, would cost $300,000 and that site clearing would cost $300,000.

The Mountain Brook annexation included only that portion of the tract lying

south of Shades Creek and within the SW¼ of the NE¼ of Sec. 17, Tp. 18, R. 2W. Mountain Brook refused to exercise zoning jurisdiction over any property outside the above boundary. The property owned by the Wrights and Mrs. Streit was divided by the annexation.

The topography of the land is very important. None of the intervenors live in the valley adjacent to Shades Creek. The intervenors' houses are above on a plateau. Only three of the testifying intervenors are in any sense contiguous. These intervenors' lots are not less than 265 feet deep and the houses are built facing south (away from the subject property) and within 40 feet of Mount Royal Circle, which is south of their houses.

The Wrights purchased their property in 1954, and have operated a commercial hothouse on the premises ever since. In 1960, over their protest and unknown to Mrs. Streit, a portion of the property was annexed to the City of Mountain Brook. As is customary for all property newly brought into the city, it was zoned A–1 Residential. This made the investment of Mr. Wright in commercial hothouses drastically reduced because he became a "nonconforming use," which prohibited him from expanding or even making major repairs on his premises. Highway 280 was straightened and four-laned with a cloverleaf providing access to the Shades Creek Parkway in 1965. This made possible the development of a shopping mall on his property, provided it was united with the development of the adjacent Streit and Shepherd properties, so as to have access to the Shades Creek Parkway. Subsequent to the trial of this case, the remaining acreage of the Wrights and Mrs. Streit and the Shepherd property not within Mountain Brook was zoned commercial for a shopping center by the City of Homewood.

The tract is suitable for a commercial development if used as one parcel. If the artificial division lines, such as the Mountain Brook city limits, or section lines or property lines between the Wrights and Mrs. Streit and the Shepherd tracts are separately viewed, the property can never be developed commercially because it would be divided into too many small parcels and the Wright tract would not have access to the Shades Creek Parkway.

Appellants concede in brief that the evidence tended to show that the entire subject property was not suitable for any development except for the shopping center which was proposed; and that appellees' evidence tended to show that from an economic standpoint, this was an extraordinarily promising project.

Other jurisdictions have also upheld variances that have been obtained from boards of zoning adjustment for the construction of shopping centers. Gallagher v. Zoning Board of Review of Pawtucket, 95 R.I. 225, 186 A.2d 325; Leveille v. Zoning Board of Appeals of Town and City of Meriden, 145 Conn. 468, 144 A.2d 45; Ward v. Scott, 16 N.J. 16, 105 A.2d 851; Olson v. Zoning Board of Review of the City of East Providence, R. I., 188 A.2d 367.

■ Verdicts are presumed to be correct; and when the trial judge refuses, as here, to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. After allowing all reasonable presumptions in favor of the correctness of the verdict, we cannot say that the verdict is clearly wrong and unjust. Bagley v. Green, 277 Ala. 118, 167 So.2d 545.

What we have said thus far disposes of the arguments under assignments of error 1, 12, 5, 7, 140, 15, 172, 173, 174, 11, 196, 197 and 152.

■ The remaining argued assignments of error are concerned with rulings on evidentiary matters. Assignment 94 reads:

"For that the trial Court erred in overruling Appellant's objection to the fol-

lowing question propounded by the Appellees to the witness Sidney E. Doyle:

"'Q. All right, sir. Based, sir, on your personal experience in the locating of shopping centers and on the contacts that you have had with other individuals have you ever in your experience found a better site for a regional shopping center such as is exhibited by Plaintiff's Exhibit 7, taking into account all of the factors that you have stated that you took into account and which I will not repeat, sir?'"

There was a general objection, which was overruled. If the objection was based upon a failure to show that the witness Sidney E. Doyle was an expert, we cannot agree. His qualifications as an expert in city planning were shown, and at the time he testified, he was a Professor of City Managing at the University of Mississippi, and in a recent zoning case, the Supreme Court of Mississippi stated: "Professor Sidney E. Doyle, Head of the Department of Urban Planning at the University of Mississippi and a recognized authority in his field, * * *." Paine v. Underwood, Miss., 203 So.2d 593. Based on the evidence in the record, we consider the witness as an expert on the subject. The trial court did not err in overruling the objection to the queston, because an answer, either affirmative or negative, would be relevant to the issues, in corroboration of the evidence already presented showing unnecessary hardship, or the absence of long range planning by the annexing municipality.

We think this also applies to the rulings on the questions to the same witness, which are the subject of assignments 68, 54 and 55.

■ Assignment 42 reads:

"For that the trial Court erred in overruling Appellant's objection to the following question propounded by the Appellees to the witness Harold Wright:

"'Q. Let me ask you this. Have you ever gotten any benefit whatsoever out of being in the City of Mountain Brook?'"

Assuming, without conceding, that the general objection to the question should have been sustained, we are not convinced, after an examination of the entire cause, that the ruling complained of has probably injuriously affected substantial rights of the parties. Supreme Court Rule 45.

■ Assignment 22 reads:

"For that the trial Court erred in overruling Appellant's objection to the following question propounded by the Appellees to the witness Louis H. Weygand:

"'Q. From an economic standpoint, is it or is it not, in your judgment, feasible to run a road through this man's house and to tear down his greenhouses to offer these lots, such as is shown in this sketch—'"

The witness was a civil engineer, who had done work on Shades Creek and had computed the drainage area of Shades Creek at its intersection with U. S. Highway 280. He had previously testfied that he had been employed by developers before they purchased land to advise them as to whether the land was suitable for residential purposes; and that one of the factors on which he based his advice was whether the area would be conducive to expensive lots or houses, or for low priced lots or houses. The court overruled the objection, saying, "I will let him give his professional opinion." The witness did not answer from an "economic standpoint," but gave his judgment as to what would be "normal."

We think the trial court ruled correctly, but, if erroneous, it was error without injury under Supreme Court Rule 45.

■ Assignment 112 reads:

"For that the trial Court erred in overruling Appellant's objection to the following question propounded by the Ap-

pellees to the witness Frederick Lee Smith:

"'Q. How much of the $58,000,000 that they are spending are they spending within five minutes of this place?'" (R. 839)

In our original opinion, we said that we did not consider this assignment because there was no objection to it. We were mistaken. The question appears on page 839 of the record and there was no objection there, but we overlooked an agreement between the trial court and counsel, on page 826, that appellant could have an objection to any question asked this expert witness. Appellant argued in brief that the testimony was immaterial, hearsay and violative of the best evidence rule.

The witness, F. L. Smith, was in the marketing, advertising and sales promotion business, was vice-president of Sparrow Advertising Agency, had made marketing analyses, and was employed to make a market analysis of the trade area of the proposed shopping center and to ascertain certain facts in regard to five, ten and fifteen minutes driving time of it. He testified in detail that much of his figures and calculations came from "Annual Survey of Buying Power," "Census Reports of the United States" and "Standard Rate and Data," which he identified as recognized technical texts in the market analysis field. He explained how he had compiled the income and sales figures and a chart, plaintiff's Exhibit 29, which contained the same figures about which the witness had testified, and the source from which they were taken. Page 842 of the record shows the following:

"MR. SHARP: We offer this.

"MR. POINTER: Let me see it, please. (Pause.) We have no objection. (Whereupon, said chart was marked Plaintiff's Exhibit 29 and is set out in words and figures as follows:)"

Thus, the identical figures were introduced without objection.

The rule is that even if the trial court erred in the ruling on the question, which we do not concede, such error would be rendered harmless by the later admission of other evidence to the same effect without objection or motion to exclude. Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110; Neumiller v. Jenkins, 270 Ala. 231, 117 So.2d 402; Schoen v. Schoen, 271 Ala. 156, 123 So.2d 20; Turner v. Blanton, 277 Ala. 536, 173 So.2d 80.

There can be no question but that the same evidence was admitted with the expressed statement that there was no objection.

No reversible error has been made to appear in the argued assignments of error.

Affirmed.

LIVINGSTON, C. J., and HARWOOD and BLOODWORTH, JJ., concur.