235 So.2d 371

**KINGSBERRY HOMES CORPORATION, a Corporation, and Kingsberry Homes Division of Boise Cascade Corp., a Corporation, successor by reason of merger to Kingsberry Homes Corporation**

**v.**

**Howard E. RALSTON.**

**6 Div. 658.**

Supreme Court of Alabama.

March 26, 1970.

Rehearing Denied May 15, 1970.

John H. Morrow, Warren B. Lightfoot, Birmingham, for appellant.

Francis H. Hare, Birmingham, for appellee.

BLOODWORTH, Justice.

This is an appeal by the defendant Kingsberry Homes from a judgment for plaintiff, and judgment overruling motion for new trial, in an action for personal injuries which resulted in a jury verdict for $27,500.

Plaintiff, a freight train conductor, recovered a consent judgment for $40,000 against his employer, the AGS Railroad, under the Federal Employers' Liability Act for his injuries arising out of this accident. Plaintiff then brought this suit against Kingsberry Homes for negligently maintaining its loading dock in a condition not reasonably safe for the crews of railway freight trains because of such a close clearance between the loading dock and freight

cars on a spur track. After a jury trial, he recovered judgment against Kingsberry Homes for $27,500. The consent judgment against AGS is subject to deduction for any recovery from Kingsberry Homes.

This accident occurred when plaintiff came on the premises on the AGS train to move three empty boxcars sitting on the spur track adjacent to the platform. While plaintiff was using the stirrup or step of a boxcar to climb upon the Kingsberry platform to see whether the cars were clear of workmen before a coupling was made, his fellow crewman backed the train into the far end of that boxcar and mashed him between the side of the car and the loading platform, fracturing his acetabulum. Plaintiff related that he had not given any signal to the brakeman, but that the brakeman had taken it upon himself to signal the train back. He said that the train should not have moved without getting a signal from him to couple up. He did not expect the cars to move at all.

Kingsberry Homes operated a manufacturing plant in Fort Payne, Alabama, receiving freight at its premises on a spur track off the AGS Railroad main line. Shipments were loaded and unloaded from AGS Railroad cars to Kingsberry Homes upon its loading platform constructed adjacent to the spur track. The spur track at this point was owned by Kingsberry Homes. The loading platform was constructed after the spur track was built. It is located from 6 feet 5 inches to 6 feet 8¼ inches from the center of the track. The area between the track and the platform was dirt; it was not level but sloped. There was debris, wood and steel scattered along the area. From the side of a boxcar sitting on the spur to the edge of the platform was approximately 22 inches. Measurements of the distance from a step on a boxcar to the platform showed it to be about 13½ inches. The floor of a boxcar was about even with the level of the plat-

form. A steel plate is used by Kingsberry to connect the platform with a railroad car to load or unload its materials with a fork-lift.

Defendant's predecessor company [1] entered into a contract with the railroad that it would " * * * at all times keep free and clear of any obstruction whatever * * the space twenty (20) feet in width measured ten (10) feet each way from the center of said track, all structures, facilities or property located or placed * * * parallel with the same to be safely and substantially maintained * * * to preserve said clearances; * * *."

On this appeal, appellant Kingsberry Homes argues for reversible error the actions of the trial court, viz: Overruling its motion for a new trial as to the insufficiency of the evidence; refusing to give its general affirmative charge with hypothesis; refusing to give its two charges dealing with "open and obvious" dangerous conditions, and its charge relating to a "hazard or danger" of which plaintiff's employer was fully aware; and, sustaining plaintiff's objection to a question to defendant's witness as to whether a loading platform is an "obstruction."

■ First, Kingsberry complains of the overruling of its motion for new trial. The only ground argued is that the verdict is contrary to the great weight of the evidence, thus it is the only one we consider. State v. McDaniel, 285 Ala. 310, 231 So.2d 878; Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484; Boudrow v. H & R Construction Company, 284 Ala. 60, 222 So.2d 154 (1969).

In Zoning Board of Adjustment, etc. v. Wright, 283 Ala. 654, 658, 220 So.2d 261, we restated our oft-expressed rule:

"Verdicts are presumed to be correct; and when the trial judge refuses, as here, to grant a new trial, the presumption

---

1. The original loading platform was apparently built by Elkton Export Boxing Company which changed its name to Lumber Fabricators, Inc., which in turn changed its name to Kingsberry Homes. The contract was executed by Lumber Fabricators.

in favor of the correctness of the verdict is strengthened. \* \* \*"

We have also repeatedly held that we "will not reverse an order refusing a new trial on the ground that the evidence is not sufficient to support the verdict, or that the verdict is contrary to the evidence, 'unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.'" Reed v. Thompson, 225 Ala. 381, 382, 143 So. 559, 560; State v. Smith, 283 Ala. 454, 457, 218 So.2d 266 (1969). We are not so convinced. As we hereinafter indicate, we believe the trial court properly submitted the case to the jury under its instructions, and that the case was one for the jury's determination. The jury having spoken, we will not disturb its verdict. We find no reversible error here.

Next, Kingsberry urges error to reverse in the trial court's refusal to give the general affirmative charge with hypothesis. The argument here seems to be that defendant is not liable to the plaintiff on account of injury resulting from the "open and obvious" danger due to the closeness of the loading platform to the track, because plaintiff knew and was aware of it; and, that Kingsberry was under no duty to alter or reconstruct these premises to obviate the known danger. Kingsberry queries us:

"What could defendant do to avoid this accident and liability in this case? The only answer can be—Tear down the platform or dismantle the track. Ralston's own testimony [2] demonstrated without dispute \* \* \* that Ralston was fully aware of the danger and was thus possessed of all the knowledge that a thorough and timely warning of the danger could have imparted. Kingsberry could only avoid liability by altering or reconstructing its premises to obviate the known and obvious danger, a duty which common sense and the Alabama cases clearly indicate is not owed. \* \* \*" [Footnote ours.]

Kingsberry cites McRee v. Woodward Iron Company, 279 Ala. 88, 182 So.2d 209 (1966), and Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954), as being cases with similar facts and authority for its contentions. It adds, "We would suggest \* \* \* that affirmance of this case requires that this court overrule this line of long standing Alabama cases", viz: McRee v. Woodward Iron Company, supra; Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966); Claybrooke v. Bently, supra; Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 (1937); United States Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 102 So. 25 (1924); Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609 (1914).

In answer to these contentions, appellee Ralston replies that Kingsberry had a duty towards him as an invitee—employee of the railroad—to provide a reasonably safe place to work under the common law, by statute (Title 26, § 12, Code of Alabama 1940), and by the contract. And, whether there was a negligent violation of that duty or whether plaintiff Ralston himself was guilty of contributory negligence because of the so-called "open and obvious" nature of the danger were jury questions. Ralston also contends this is not that kind of "open and obvious" danger which is contemplated by the rule. He says notwithstanding the "close clearance" was visible, the movement of the train was necessary to complete the act resulting in the injury, and this was not "obvious" because the plaintiff was not required to anticipate such negligent conduct on the part of his fellow

---

2. "Q. Well, would it be dangerous to be there with your foot on that stirrup between the platform and the car when the coupling was made at the south end of that cut of cars?

"A. *Well, it would be dangerous in there anytime when those cars are moved,* it is so close it is a dangerous situation and it has been dangerous since the thing was built so far as that goes." [Emphasis supplied.]

servants. Likewise, Ralston argues that the "no duty" rule contended for by Kingsberry does not apply where the plaintiff is present on the premises as an employee of a common carrier or other public utility since his presence is not dependent on the landowner's permission—the basis for the rule, citing Harper and James, The Law of Torts, Vol. 2 (1956 Ed.), §§ 27.13, 27.14, p. 1489 et seq. Finally, Ralston says the "no duty" rule should not apply when the invitee-plaintiff is obliged by the "economic coercion" of his job to work at the place where there is some danger or else strike or quit.

We do not think it necessary that we attempt to reconcile all these respective contentions. We have set them out in order to demonstrate the scholarly and resourceful approaches which both counsel have taken in this case, and for such benefit as may enure to Bench and Bar in future litigation in this area of the law.

We have concluded, after careful study, that the trial court's refusal of the affirmative charge was free of error—that the case was properly submitted to the jury.

We have held in numerous civil cases that "the question must go to the jury if the evidence furnishes a scintilla in support of [plaintiff's] theory"; and in considering the propriety of refusing the affirmative charge for defendant, we will review those tendencies of the evidence most favorable to plaintiff, regardless of any view we might have as to the weight of the evidence, and must allow such reasonable inferences as the jury was free to draw, not inferences which we might think to be the more probable. Orange v. Shannon, 284 Ala. 202, 224 So.2d 236.

The amended complaint charged, inter alia, that the defendant negligently maintained its loading dock,

" * * * in a condition not reasonably safe for the crews of railway freight trains, including the plaintiff, to perform their duties without danger of being caught and injured between a portion of said cars and a portion of said dock, and more particularly the defendant negligently maintained said dock with a clearance between said dock and the overhang of freight cars on said track so inadequate as to be dangerous as aforesaid, * * *."

The pertinent portions of the contract, which we have already set out, provided that the owner would " * * * at all times *keep free and clear of any obstruction whatever * * * the space twenty (20) feet in width measured ten (10) feet each way from the center of said track, all structures, facilities or property * * * located or placed * * * parallel with the same to be safely and substantially maintained * * * to preserve said clearances; * * *.*" [Emphasis supplied.]

We held in Blount Brothers Construction Company v. Rose, 274 Ala. 429, 437, 149 So.2d 821 (1962), that under the provisions of a prime contractor's contract with the government to furnish safety devices for the project, such provisions enure to, and are made for, the benefit of employees of sub-contractors on the project. Such contract, we said, "imposed the duty on appellant [the contractor] to provide a reasonably safe place for Mr. Rose [employee of the sub-contractor] and his fellow workers to work on this project. Tennessee Coal, Iron and R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459; Evans v. Patterson, 269 Ala. 250, 112 So.2d 194."

Both in Blount Brothers Construction Company v. Rose, supra, and in Tennessee Coal, Iron and R. Co. v. Sizemore, supra, the contract provisions provided for the safety of employees. We said, in Tennessee Coal, Iron & R. Co. v. Sizemore, supra:

"Under such circumstances, the injured employee, who is a party to the contract or one for whose direct benefit it was made, may sue for its breach in assumpsit, or may sue in tort for negligence in failing to perform a duty imposed by law. He has an election in that respect. (Citations omitted.)"

Although the contract in the case at bar does not in express terms provide for safety of invitees, nevertheless, we think the jury could consider its provisions as being for the plaintiff's direct benefit. It appears to us that this case is governed by the holdings in *Rose, Sizemore,* and particularly Evans v. Patterson, supra.

In Evans v. Patterson, supra, there was an action for injuries sustained by a passenger in an automobile which collided with another automobile at an unmarked intersection on a highway undergoing repairs made by defendant-contractor under contract with the State. The evidence established that the intersection was dangerous and constituted a hazard to the traveling public if not marked. We held that the contract between the defendant-contractor and the State Highway Department was admissible, and could be considered by the jury in determining what would be due care under the circumstances of that case although the common law duty was the only duty owed by defendant to plaintiff.

It was argued by the defendant-contractor in Evans v. Patterson, supra, that the action being in tort, the defendant owed no duty other than the common law duty to use due care to keep the highway safe for travel until the highway was turned over to the State upon completion of the contract and that "the contract cannot be looked to to determine the duty * * *."

While we did hold that there was only a common law duty to use due care to keep the highway safe for travel until the highway was turned over to the State, we also held that the contract could be considered to determine what would be such due care. In Evans v. Patterson, supra, we quoted with approval from Morgan Hill Paving Company v. Fonville, 222 Ala. 120, 130 So. 807, and said with respect to that case:

"In other words, this court held [in *Morgan Hill Paving Co.,* supra] that the defendant could rely on a contract as a predicate for showing a duty to the plaintiff. * * *"

Thus, we concluded in Evans v. Patterson, supra, that "with reference to the contract between the state and the contractor * * * the plaintiff was entitled to have the benefit of a duty of due care as indicated by the contract, which, as we have pointed out, includes the placing of warning signals at the intersection here involved."

We say here the plaintiff was entitled to have the benefit of a duty of due care as indicated by the contract in this case.

As to Kingsberry's contention that it was due the affirmative charge on the theory that a landowner is not liable for injury to an invitee from "open and obvious" dangers or dangers known to the invitee and that plaintiff's testimony conclusively showed that he knew of the danger, we conclude that this contention is untenable for two independent, though similar, reasons.

As we have already mentioned, it is settled that a scintilla of evidence for the plaintiff is sufficient to warrant submission of the issues to the jury. Admitting arguendo the applicability of the "open and obvious danger" rule to the facts at bar, we think that there was at least a scintilla of evidence to show that plaintiff did not know of the danger. While plaintiff did testify that he knew that the loading platform was dangerous, he further testified that *he knew it was dangerous* to be between the cars and the platform *while the cars were moving.* The jury could consider that at the time of the accident, plaintiff had no reasonable expectation that the cars would be moved; on the contrary, he testified that his fellow employees were supposed to await a signal from him before proceeding with the coupling and that he had given no signal. Thus, the jury could say defendant's loading platform became a danger only when there appeared to be a likelihood that the cars would move.

Claybrooke v. Bently, supra, is cited as requiring the opposite conclusion. We think not, and that *Claybrooke* is distin-

quishable. In that case plaintiff's decedent, an invitee, was killed when a truck driven by a fellow employee, while backing up to load some cotton seed, caught a ramp which plaintiff's decedent was holding, mashing him between the ramp and defendant-invitor's building. We reversed the trial court for its refusal to give the affirmative charge for defendant because we said the plaintiff knew of the danger or had a knowledge of it equal or superior to that of defendant. Here, plaintiff not only knew of the close clearance but also of the impending movement of the truck.

While we are not certain that we fully understand the rationale of *Claybrooke*, we find the factual distinctions between it and the case at bar to be so great that it made submission of plaintiff Ralston's case to the jury proper under the scintilla rule. Additionally, there was no contract in *Claybrooke* (as exists in the case at bar) which the jury could look to and consider as providing specific safety measures for the benefit of employees of the invitee.

The same distinction renders inapposite McRee v. Woodward Iron Company, supra; Crawford Johnson and Co. v. Duffner, supra; Lamson & Sessions Bolt Co. v. McCarty, supra; Connors-Weyman Steel Co. v. Kilgore, supra. The dictum in United States Cast Iron Pipe & Foundry Co. v. Fuller, supra, on which appellant relies supports his contentions only by the broadest inference.

We think there is yet another reason why appellant's contention must fail. It is settled that contributory negligence in an invitor-invitee situation requires not only *knowledge of the dangerous condition* but also *an appreciation of the danger* and *a want of due care*. F. W. Woolworth Co. v. Bradbury, 273 Ala. 392, 140 So.2d 824 (1962); Foster & Creighton Co. v. St. Paul Mercury Indem. Co., 264 Ala. 581, 88 So.2d 825 (1956).

In *Foster & Creighton*, supra, plaintiff's decedent was killed when he fell through an unguarded open hole in the third floor of a building under construction. Appellant requested the affirmative charge based on the theory that it was not liable for injury from an open and obvious danger, but it was refused. Our court affirmed the trial court and held that whether the elements of contributory negligence were present in that case was a question for the jury. In addition, defendant requested and was refused a written charge to the effect that if plaintiff knew of the unsafe condition, he could not recover. We said the trial court was correct in refusing this charge because mere knowledge of the dangerous condition unaccompanied by an appreciation of the danger and a want of due care is insufficient to constitute contributory negligence.

In F. W. Woolworth Company v. Bradbury, supra, plaintiff-invitee was injured in defendant's store when she slipped on some trash which she testified to having previously noticed. Defendant requested the affirmative charge, contending, in the language of the court, viz:

"* * * that liability cannot be imposed upon a storekeeper or other possessor of premises because of any injury occasioned by an open and obvious condition existing on the premises of the defendant; that the defendant's duty to the plaintiff is discharged when knowledge is brought home to the plaintiff of the dangerous condition; the defendant simply owes plaintiff no duty in regard to those conditions of which plaintiff actually has knowledge. * * *" [At page 394, 140 So.2d at pages 825–826]

We held there was no reversible error in the denial of the affirmative charge, again noting that mere knowledge of the dangerous condition, absent appreciation of its danger, does not constitute contributory negligence. We said there, "We have long been committed to the proposition that *the plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury.*" [Emphasis supplied.]

We think that plaintiff's knowledge in the case at bar of the alleged dangerous

condition on defendant's premises, viz., the close clearance does not necessarily import an appreciation of the danger and a want of due care. Certainly, plaintiff appreciated the danger presented by the close clearance when cars were in motion, as he himself admits, but whether plaintiff can be said to have appreciated a danger which was contingent upon the unexpected negligence of a third party and whether the plaintiff failed to exercise due care were questions for the jury.

Thus, we conclude, notwithstanding the defendant Kingsberry owed to plaintiff a common law duty to keep the premises reasonably safe for its invitees, the contract in question could be looked to and considered by the jury in its determination as to what would be a reasonably safe place under the circumstances of this case. It would then be for the jury to say what was the extent of Kingsberry's duty and whether it violated its duty. In considering these questions, it would consider whether Kingsberry negligently maintained the dock in a condition not reasonably safe for freight train crews; whether its duty to provide a reasonably safe place included a place free of obstruction for ten feet from the center of the track; whether the loading platform was such an obstruction or not; and, whether the defendant had located all "structures, facilities or property" so as "to preserve said clearances." If the jury determined these matters against the defendant, finding it had violated its duty, then it would consider whether the plaintiff's injuries and damages were proximately caused by the same, or whether the plaintiff himself in his actions and with knowledge and appreciation of the close clearance of the place in question in the event of movement of the cars was guilty of contributory negligence so as to bar his recovery.

While we do not think we have to answer Kingsberry's query, "What could defendant do to avoid this accident and liability in this case?", nor to comment on its answer to its own question that it must "tear down the platform or dismantle the track"

to obviate the so-called known or obvious danger, we do feel we ought to make the following observations.

The question here is not whether Kingsberry can avoid liability only by altering or reconstructing its premises, but what is the extent of the common law duty which Kingsberry owes, and in determining this the jury can look to the contract to determine if it did exercise due care under the circumstances of this case. Evans v. Patterson, supra, followed in W. S. Fowler Rental Equipment Co. v. Skipper, (1963) 276 Ala. 593, 165 So.2d 375.

Obviously, if the jury determines that this duty includes maintaining the ten foot clearance from the center of the track and that the platform was an obstruction within the meaning of the contract, then the defendant would have to alter the physical premises in accordance with the contract or face the future contingency of others being injured thereby. But, defendant, through its predecessors in possession, made the contract with the railroad which enured to the benefit of the plaintiff. Can it now complain of being forced to do that which it voluntarily bound itself to do by contract—namely, to maintain the required clearance?

We are of the opinion that the evidence in the case and legitimate inferences which may be drawn therefrom presented issues of fact for the jury, and the trial court correctly refused the general affirmative charge with hypothesis.

■ Next, Kingsberry contends for error in refusing its two requested charges dealing with "open and obvious" danger. These charges are, viz:

"7. I charge you, members of the jury, that a landowner, such as Kingsberry Homes, is under no duty to alter or reconstruct its premises to remedy known and open and obvious dangerous conditions of which an invitee is aware or of which he should be aware in the exercise of reasonable care, and if you are reasonably satisfied from the evidence in this case that plaintiff suffered

his injuries and damages as a proximate result of an open and obvious dangerous condition of which plaintiff was aware or should have been aware in the exercise of reasonable care, then your verdict must be for the defendant.

"Refused, Windham, Judge

\* \* \* \* \* \*

"13. I charge you, members of the jury, that the defendant, Kingsberry Homes, is not liable to the plaintiff, Mr. Ralston, because of an injury to Mr. Ralston resulting from an open and obvious dangerous condition of which Mr. Ralston was aware, or of which he should have been aware in the exercise of reasonable care, and if you are reasonably satisfied from the evidence in this case that the plaintiff, Mr. Ralston, suffered his injuries and damages as a proximate result of an open and obvious dangerous condition of which the plaintiff, Mr. Ralston, was aware or should have been aware in the exercise of reasonable care, then your verdict must be for the defendant.

"Refused, Windham, Judge"

Though we do not say whether or not these charges are in every respect correct statements of the law in this case[3], we are convinced that they were refused without error because they were substantially covered by the oral charge of the court. While we will not unduly lengthen this opinion to set out all the pertinent portions of the oral charge, we set out a part of the charge which we consider covers these charges:

"The question is raised in some of these charges here about whether or not this defendant would be liable to Mr. Ralston because of some injury that he might have received from an obvious danger, open and obvious danger. For instance, that he might know about or that the law will charge him with knowing about. Well, now, there wouldn't be any liability for that in coming to a con-

clusion on your own part about the question of whether or not the defendant was using due care in the maintenance of the dock, and on the question of whether or not Mr. Ralston was, when he was there at that dock, using care on his own part. In considering those two propositions you would have a right to consider, and you should consider all of the circumstances of the full situation, whatever this Mr. Ralston was doing, why was he there, and was he exercising reasonable care under the circumstances. \* \* \*

\* \* \* \* \* \*

" \* \* \* but if his duties call for him to be at that place, he would have the duty always to use reasonable care where he goes and how he goes and how he handles himself and, as I said a while ago, reasonable care takes into consideration whatever the danger may be. But, at any rate, this charge says, and I will just phrase it in my own language, that as to any hazard that there was there at that place, and from being at that place, if Mr. Ralston himself knew about it, and was fully aware of it, and appreciated it, and never the less was there, and on that account, and on that account alone got hurt, there wouldn't be any liability on the defendant if that be true, and the court makes no comment about whether it is true or not true, it isn't any of my business, the only business I have is to give you the law."

■ The next error charged is refusal of defendant Kingsberry's charge D, as follows:

"D. I charge you, members of the jury, that if you are reasonably satisfied from the evidence that plaintiff suffered his injuries and damages as a proximate consequence of a hazard or danger existing on the defendant's premises of which responsible representatives of plaintiff's employer having supervisory responsibility over the plaintiff were ful-

---

3. We note that appellant cites no case wherein the refusal to give these written charges has been held reversible error. It does cite authority that the giving of the same is not error.

ly aware, then your verdict must be for the defendant.

"Refused, Windham, Judge"

We believe this charge also was amply covered by the oral charge of the court. Here again we will set out but a portion of that charge:

"* * * The Plaintiff is, in the same position that his employer would be in if either the Plaintiff or he fully knew about the thing, what was there, which later on hurt him, that would be sufficient to cut him off as I said, subject to the exceptions that I pointed out a while ago, but that same thing would be true if his employer, the one whose service he was in, if his employer had that knowledge it would serve the same way as if the Plaintiff himself had any knowledge it would be the same thing, exactly the same results."

■ We might add that Kingsberry admits the oral charge contained the substance of the refused written charges, at least "in part," but maintains that other language in the oral charge qualified the rule expressed in the written charges "in such a way as to make it have virtually no application to this case." We simply point out that although Kingsberry excepted to and assigned as error portions of the oral charge, it has not argued these assignments in brief. Assignments not· argued are deemed waived. Stallworth v. Doss, 280 Ala. 409, 194 So.2d 566.

■ Finally, we come to the last alleged error, the sustaining of plaintiff's objection to a question directed by defendant to his own expert witness.

"Q. Would you tell us whether or not a loading platform is an obstruction?

"MR. HARE: We object to that, Your Honor, he might as well ask him whether ten feet means five feet.

"THE COURT: I will sustain."

Kingsberry says this evidence is admissible on four theories: that parties to the contract did not regard the platform as an obstruction; latent ambiguities can be explained by extrinsic evidence; technical words are explainable by parol; subsequent dealings of parties to a contract are important as showing the construction put on the contract by the parties themselves.

We feel there is no merit in these contentions and that the trial court correctly sustained the objection. The question was irrelevant to begin with, as it referred to "a" loading platform instead of "the" loading platform in the case. If the question is considered to be addressed to "the" platform, it is invasive of the province of the jury as that is one of the very facts in issue.

We think two of our cases are apt authority for upholding the trial court's ruling.

Alabama Great Southern R. Co. v. Baum, 249 Ala. 442, 31 So.2d 366, was an action for injuries sustained in alighting from a locomotive, where claim was made that a step had ice on it. The trial court sustained plaintiff's objection to the following question propounded to Mr. Farmer, the engineer, by defendant:

"* * * 'Q. Was there any defect in your steps, Mr. Farmer?'"

We said:

"What counsel for defendant was attempting to prove by this question is not entirely clear. If he was attempting to prove that there was no structural or mechanical defect in the steps, this fact was not an issue in the case, * * *.
* * * * * *

"If, on the other hand, the purpose of counsel for defendant was to elicit an answer as to whether or not the step was defective because it had ice on it, the court very properly sustained objection to it. If this was the purpose of the question, then it called for a conclusion on the part of the witness, and also was invasive of the province of the jury. * * *"

In Alabama Great Southern Railroad Company v. Bishop, 265 Ala. 118, 89 So.2d 738, there was an action against the rail-

road for injuries sustained when plaintiff's foot caught in a crevice at a crossing and he fell and was struck by the train. In that case:

"* * * The [plaintiff's] expert, one Kershaw, testified over defendant's objection that the construction of the crossing in question was not reasonably proper and safe from the standpoint of the safety of a pedestrian at a grade crossing * * * *that the absence of any filling in the void creates a hazard* in pedestrian, vehicular or animal traffic; that leaving the void unfilled left the crossing not reasonably safe for pedestrians; and that the crossing was not reasonably safe. [Emphasis supplied]

\* \* \* \* \* \*

"* * * We conclude that the subject here under examination, e. g., a crevice in a crossing (any more than a hole in the sidewalk or street) does not require expert opinion that it would be safe or unsafe for pedestrians for the reason that, given the physical facts, the ordinary mind is capable of forming a judgment thereon.

\* \* \* \* \* \*

"For the error in admitting the testimony of Mr. Kershaw as above referred to the judgment must be reversed."

We reiterate we think the jurors themselves are as capable as anyone to conclude from the evidence whether the platform was an "obstruction" within the meaning of the contract.

Having carefully considered each assignment of error and having concluded there is no error in the record, we are of the opinion that this case should stand affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.

## ON REHEARING

On application for rehearing, appellant argues that our original opinion misstates the respective roles of the court and the jury as to defendant Kingsberry's duty to the plaintiff. Appellant says the opinion leaves it to the jury to determine what is the defendant's duty.

The criticism seems to be directed at our choice of words in two instances when we wrote: "It would then be for the jury to say what was the extent of Kingsberry's duty and whether it violated its duty"; and, "The question here is not whether Kingsberry can avoid liability only by altering or reconstructing its premises, but what is the extent of the common law duty which Kingsberry owes * * *."

If our opinion is subject to this interpretation, we certainly did not intend it. We adhere to the long-established common law tradition that it is for the court to define the duty owed, and for the jury to say whether there has been a breach of that duty. This duty, as we pointed out in this case, is to keep the premises reasonably safe for invitees such as plaintiff. What we said in the original opinion, and we reiterate it here, is that the jury could consider the contractual obligation in determining *as a matter of fact* whether Kingsberry breached this common law duty, that is, *what is the extent of this duty under the evidence*.

Counsel also indicates that our statement in the opinion: "The consent judgment against AGS is subject to deduction for any recovery from Kingsberry Homes," may reflect a misunderstanding of the facts. We do not think so. Whether our statement is correct or not is immaterial since it is neither an issue nor a relevant fact in the case. Therefore, we withdraw it from the original opinion.

In conclusion, we do not consider "the Court's opinion marks a revolutionary departure from established common law concepts" as appellant suggests. We see no need to discuss any other contentions made in support of application for rehearing since we consider they were fully and amply developed in the original opinion.

Opinion corrected and extended. Application overruled.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.