James G. WALLACE, Plaintiff-Appellee,

v.

TRI–STATE MOTOR TRANSIT CO.,
etc., et al., Defendants,

Tri-State Motor Transit Company,
Defendant-Appellant.

No. 83–7411.

United States Court of Appeals,
Eleventh Circuit.

Sept. 11, 1984.

James H. Starnes, Birmingham, Ala., for defendant-appellant.

Ray O. Noojin, Jr., Francis H. Hare, Jr., Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RO-NEY, Circuit Judge, and TUTTLE, Senior Circuit Judge.

GODBOLD, Chief Judge:

In this case we consider Alabama's "no duty" rule applicable to tort actions between landowner and invitee. We reverse the judgment for plaintiff and hold that under Alabama law the defendant landowner owed no duty to the plaintiff and that defendant's motions for directed verdict and judgment n.o.v. should have been granted.

Allstate Security Systems contracted with defendant Tri-State to provide security at one of Tri-State's closed Birmingham terminals from 6:00 p.m. to 6:00 a.m. Wallace was employed by Allstate as security guard on those premises, which were used as a rest stop for Tri-State drivers.

A 45-foot gate protected the entrance to the property. When the property had been in use as a terminal, the gate was mechanically opened from inside the terminal. When the terminal was closed, the motor was disconnected and the gate had to be manually opened. A combination lock was placed on the gate so Tri-State's drivers could open the property for rest stops.

Wallace was aware of the dangers in opening the heavy gate by hand. In fact, he conveyed his knowledge of the danger to the owner's representative on May 8, 1982, after the motor was disconnected. He told the representative that the gate was "too heavy, someone will get hurt." During the next one and one-half months Wallace and others opened the gate without injury. On June 20, 1982 Wallace was injured while opening the gate.

In Alabama the duty owed by an owner or occupier of premises to an invitee or independent contractor injured by a dangerous instrumentality on those premises is well settled: " '[A]n owner of premises is

not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, *or ought to know of.*' " *Glenn v. U.S. Steel Corp.*, 423 So.2d 152, 154 (Ala.1982) (emphasis in original) (quoting *Veal v. Phillips*, 285 Ala. 655, 657, 235 So.2d 799, 802 (1970)).

The Supreme Court of Alabama recently considered this rule in *Glenn*. In that case an employee of an independent contractor was electrocuted by high tension wires that were under the control of the owner and hung dangerously low over a road used to haul scrap. The electrocuted employee knew or should have known of the danger through the signs he saw and verbal warnings he received. The Alabama Supreme Court adhered to the rule that the landowner owes no duty to the invitee other than to warn the invitee of the dangerous condition. 423 So.2d at 155–56. Justice Jones dissented from the court's decision. He argued that the "no duty" rule was outdated and that the court should adopt the rule contained in the Restatement (Second) of Torts § 343A that a possessor is not liable for injury done by known dangers " *'unless the possessor should anticipate the harm despite such knowledge.'* " *Id.* at 157 (quoting Restatement (Second) of Torts § 343A (1965)) (emphasis in original). The Alabama rule does not contain that additional provision. Pointing out what he perceived as the defect in the Alabama rule, Justice Jones stated:

Notwithstanding U.S. Steel's warning the independent contractor of the presence of the wires or the contractor's own knowledge of and appreciation for the condition and the danger involved, that knowledge in no way diminished the unreasonable risk of danger to Charlie Glenn. While U.S. Steel, as landowner, controlled the presence of the condition (and the attendant risk of harm) and could have chosen various means of diminishing the risk involved, Glenn and Washburn had no choice but to perform their assigned tasks within the frame-

work of available equipment and supplies and existing conditions.

*Id.* at 157–58.

■ The situation in *Glenn* resembles this case. Plaintiff knew of the danger but he had to continue to perform his duties subject to what the jury necessarily found to be an unreasonable risk of harm. Under the Restatement (Second) approach the landowner's duty would not be extinguished by plaintiff's knowledge if further harm could be anticipated. Under the Alabama rule, once the plaintiff knew of the danger no further duty rested on the landowner; that is, once Wallace knew of the danger, Tri-State's duty was discharged even though, armed with that knowledge, Wallace was still arguably subject to an unreasonable risk of harm.

Wallace argues that Tri-State should have a duty to correct the problem and proceed beyond warning of the danger when the plaintiff must confront the danger in spite of the warning. This is not the Alabama rule. In *Collum v. Jackson Hospital & Clinic,* 374 So.2d 314, 316 (Ala. 1979), the court noted that even if the object on the premises was dangerous, it is well settled that " '*the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers ....*' " (emphasis in original) (quoting *Lamson & Sessions Bolt Co. v. McCarty,* 234 Ala. 60, 63, 173 So. 388, 391 (1937)).

In *Quillen v. Quillen,* 388 So.2d 985 (Ala.1980), brother *A* sued brother *B* when *A* was injured after falling from a ladder while installing a TV antenna at *B*'s house. The court noted the general rule that "an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." *Id.* at 989. The court noted the rationale for imposing landowner's liability: "The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries.... Therefore, if that superior knowledge is lacking, as when the dan-

ger is obvious, the invitor cannot be held liable." *Id.* The court held that, because the plaintiff had knowledge of the ladder's dangerousness through the obviousness of the danger, the defendant could not be held liable. As in *Quillen,* because the danger was obvious (and indeed reported by plaintiff), the landowner lacked the superior knowledge that is the rationale for liability.

At bottom Wallace argues that the "no duty" rule should not apply when the plaintiff remains subject to a risk of harm even after knowledge. But this is the same argument that dissenting Justice Jones advocated in *Glenn* and that was rejected in favor of the "no duty" rule. Absent a duty to the plaintiff, the defendant's motion for directed verdict and judgment n.o.v. should have been granted.

Wallace briefly attempts to classify Alabama caselaw as "repair" cases and "work in progress" cases and argues that this case falls outside these artificial categories and somehow escapes the "no duty" rule. The Alabama cases, however, neither implicitly nor explicitly recognize these distinctions.

■ Wallace also contends that this case involved active negligence and not the landowner's liability for injury from a defective condition. That the landowner creates the condition does not itself create active negligence outside the "no duty" rule. In fact, in all of the "no duty" cases the landowner created the conditions that later caused injury. The cases involving active negligence and the liability of the landowner for such negligence do not resemble this one. For example, in *Alabama Power Co. v. Henderson,* 342 So.2d 323 (Ala.1976), an employee of a contractor was injured by falling concrete when a concrete form broke as concrete was poured into it. Liability of the landowner was premised not on its status as landowner but on the negligence of its representative on the scene charged with supervising the pouring and checking of the mixture. *Id.* at 325–26. Similarly, in *Standifer v. Pate,* 291 Ala. 434, 282 So.2d 261 (1973), liability was premised not on the landowner's status but

on negligent supervision by a babysitter. The court noted that being a landowner did not insulate one from liability for negligence in relationships other than landowner-invitee. *Id.* 282 So.2d at 263. In the present action the negligence arises out of the landowner's relationship with the invitee and not out of any other relationship. Wallace claims that Tri-State breached its duty as a landowner by allowing the dangerous condition, not that Tri-State breached a duty from any other relationship or active operation. The record supports no negligence other than maintaining the dangerous gate on the premises.

■ Finally, Wallace insists that the "no duty" rule is properly analyzed under Alabama law as a question of contributory negligence for the jury and not as a matter to be taken from the jury by the court on defendant's motion for directed verdict or judgment n.o.v. Of course, disputed issues of fact going to the obviousness of the danger or the adequacy of the landowner's warning would be questions for the jury in determining the scope of the duty. In this case, however, no issue of plaintiff's knowledge of the danger was ever made. Plaintiff knew firsthand the dangers of the gate and reported the danger to Tri-State. When plaintiff's knowledge of the danger is admitted or beyond dispute, the case falls squarely within the "no duty" rule, and nothing is left for the jury. Absent a duty, there can be no breach of a duty (negligence) and no need to consider the plaintiff's contributory negligence. *Kingsberry Homes Corp. v. Ralston,* 285 Ala. 600, 604, 235 So.2d 371, 376 (1970), does not stand for a contrary position. In that case the duty question went to the jury because there was at least a scintilla of evidence that the plaintiff did not know of the danger. *See id.*

The court should have granted defendant's motions for directed verdict and judgment n.o.v.

REVERSED.